# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|

**FEBRUARY 2025**                     **03845**

E-Filing Number: 2502060210

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| COLLEEN MCKELVEY | SPS TECHNOLOGIES, LLC, ALIAS: PCC FASTENERS - SPS JENKINTOWN |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 409 WALNUT STREET JENKINTOWN PA 19046 | 301 HIGHLAND AVENUE JENKINTOWN PA 19046 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| KIMBERLY DRUCKENMILLER | JOHN DOES 1-100 |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 203 WEST AVENUE JENKINTOWN PA 19046 | C/O SPS TECHNOLOGIES, LLC 301 HIGHLAND AVENUE JENKINTOWN PA 19046 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MARK DRUCKENMILLER | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 203 WEST AVENUE JENKINTOWN PA 19046 | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 5 | 2 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal  [ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS |
|---|---|
| [ ] $50,000.00 or less [X] More than $50,000.00 | [ ] Arbitration  [ ] Mass Tort  [ ] Commerce  [ ] Settlement [ ] Jury  [ ] Savings Action  [ ] Minor Court Appeal  [ ] Minors [ ] Non-Jury  [ ] Petition  [ ] Statutory Appeals  [ ] W/D/Survival [X] Other: CLASS ACTION |

**CASE TYPE AND CODE**

C1 - CLASS ACTION

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

FILED
PRO PROTHY

FEB 27 2025

C. SMITH

**IS CASE SUBJECT TO COORDINATION ORDER?**    YES    NO

---

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: COLLEEN MCKELVEY , KIMBERLY DRUCKENMILLER , MARK DRUCKENMILLER

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| KILA B. BALDWIN | 130 N. 18TH STREET SUITE 1600 PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)313-9858 | none entered | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 94430 | kbaldwin@anapolweiss.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *KILA BALDWIN* | Thursday, February 27, 2025, 04:02 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF PLAINTIFFS:

1. COLLEEN MCKELVEY
    409 WALNUT STREET
    JENKINTOWN PA 19046
2. KIMBERLY DRUCKENMILLER
    203 WEST AVENUE
    JENKINTOWN PA 19046
3. MARK DRUCKENMILLER
    203 WEST AVENUE
    JENKINTOWN PA 19046
4. HAYLEY DOYLE
    747A YORK WAY PLACE
    JENKINTOWN PA 19046
5. THE LIGHTBRIDGE ACADEMY OF GLENSIDE, PA
    361 HIGHLAND AVENUE FLOOR 1 SUITE 101
    JENKINTOWN PA 19046

| | |
|---|---|
| **ANAPOL WEISS**<br>**RICHARD M. GOLOMB, ESQUIRE**<br>Identification No: 42845<br>**KILA BALDWIN, ESQUIRE**<br>Identification No.:  94430<br>**KEVIN FAY, ESQUIRE**<br>Identification No.: 308252<br>One Logan Square<br>130 N. 18th Street, #1600<br>Philadelphia, PA 19103<br>Tel: (215) 608-9645<br>Fax: (215) 735-2211 | **MAJOR JURY CASE** <br><br>**CLASS ACTION**<br>ASSESSMENT OF DAMAGES HEARING IS<br>REQUIRED<br><br>**Attorneys for Plaintiff and the Class** |
| **COLLEEN MCKELVEY, KIMBERLY and MARK DRUCKENMILLER, h/w, HAYLEY DOYLE, AND SUMMITT GROUP LLC d/b/a THE LIGHTBRIDGE ACADEMY OF GLENSIDE, PA, individually and on behalf of all others similarly situated,**<br><br>         **Plaintiffs,**<br><br>**v.**<br><br>**SPS TECHNOLOGIES, LLC d/b/a PCC FASTENERS – SPS JENKINTOWN, and JOHN DOES 1-100**<br>         **Defendants.** | **COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY**<br><br>**CIVIL ACTION -- CLASS ACTION<br>JURY TRIAL DEMANDED**<br><br>**No:** |

## CLASS ACTION COMPLAINT

| NOTICE | AVISO |
|---|---|
|     You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.<br><br>YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP |     Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades y otros derechos importantes para usted.<br><br>LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO.  VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| Lawyer Reference Service<br>Philadelphia Bar Association<br>1101 Market Street, 11th Floor<br>Philadelphia, PA 19107<br>(215) 238-6300 | Lawyer Reference Service |

Filed and Attested by the
Office of Judicial Records
27 FEB 2025 04:42 pm
E. SMITH

Case ID: 250203845

Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6300

Plaintiffs Colleen McKelvey, Kimberly and Mark Druckenmiller, h/w, Hayley Doyle, and Summitt Group LLC d/b/a The Lightbridge Academy of Glenside, PA (collectively, "Plaintiffs"), by and through their attorneys of record, bring this class action on behalf of themselves and all others similarly situated against Defendant SPS Technologies, LLC d/b/a PCC Fasteners – SPS Jenkintown ("SPS" or "Defendant"). Plaintiffs allege as follows based upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief based on, *inter alia*, investigation conducted by their attorneys:

## <u>NATURE OF THE CLAIM</u>

1.    On February 17, 2025, a catastrophic warehouse fire erupted at Defendant's facility located at 301 Highland Avenue, Jenkintown, Pennsylvania 19046 ("SPS Facility"), which caused significant injury and damages to Plaintiffs and class members.

2.    Plaintiffs are residents and business owners who have suffered lost income, lost profits, property damage, diminution in property value, emotional distress, and increased risk of contracting serious medical problems.

3.    The fire began at approximately 9:30 pm on the evening of Monday, February 17th and burned at varying degrees of intensity for several days. According to witnesses, "there was an explosion within the building and flames could be seen inside the warehouse structure."[1]

---

[1] Abington Township Police Department, Press Release, Feb. 17, 2025, *available at* https://www.abingtonpa.gov/home/showpublisheddocument/18381/638755015186000000 (last visited Feb. 25, 2025).

Case ID: 250203845

4.    The event was declared a four-alarm fire within hours, so that additional resources could be called to the site, including a total of approximately sixty (68) fire companies that worked to battle the blaze.[2]

5.    By the morning of February 18, 2025, residents within a one-mile radius were told to shelter in place due to smoke and particulate matter blanketing the area.[3]

6.    By the afternoon of February 18, 2025, due to changing conditions and concerns of air quality, residents and businesses were advised to voluntarily evacuate immediately.[4]

7.    The shelter in place and evacuation orders were lifted on February 19, 2025, but the fire continued to burn. In fact, according to Abington Township, the fire was not fully extinguished until five days after it began, on February 22, 2025 at 3:53 pm.[5]

8.    Plaintiffs allege that Defendant was negligent, grossly negligent, and/or reckless, and created a nuisance by failing to exercise reasonable care, when doing so would have prevented the fire. Specifically, Defendant failed to develop, design, construct, inspect, maintain, operate, control, and/or engineer the SPS Facility to prevent catastrophic fires from occurring and spreading, and prevent the releases of harmful emissions.

9.    Defendant's conduct was reckless. Compensatory and punitive damages are warranted to redress the harms Defendant caused and deter similar conduct in the future.

10.    Upon information and belief, thousands of residents and businesses have been damaged as a result of Defendant's conduct.

---

[2] Abington Township Police Department, Press Release, Feb. 18, 2025 at 10:00 am, *available at* https://www.abingtonpa.gov/home/showpublisheddocument/18375/638754714692638166 (last visited Feb. 25, 2025).
[3] *See id.*
[4] Abington Township Police Department, Press Release, Feb. 18, 2025 at 2:15 pm, *available at* https://www.abingtonpa.gov/home/showpublisheddocument/18379 (last visited Feb. 25, 2025).
[5] Abington Township Police Department, Press Release, Feb. 22, 2025, *available at* https://www.abingtonpa.gov/home/showpublisheddocument/18415 (last visited Feb. 25, 2025).

Case ID: 250203845

## PARTIES

11.    Plaintiff Summit Group LLC d/b/a The Lightbridge Academy of Glenside, PA ("Lightbridge") is a childcare center providing educational programs for infants, toddlers, and preschoolers. It is a Pennsylvania limited liability company located at 361 Highland Avenue, Floor 1, Suite 101, Jenkintown, PA 19046, directly across the street from the SPS Facility.

12.    Plaintiff Colleen McKelvey is a natural person and a citizen of the Commonwealth of Pennsylvania, with a principal residence at 409 Walnut Street, Jenkintown, Pennsylvania, which is approximately three (3) blocks from the SPS Facility.

13.    Plaintiffs Kimberly and Mark Druckenmiller are natural persons and citizens of the Commonwealth of Pennsylvania, with a principal residence at 203 West Avenue, Jenkintown, Pennsylvania 19046, which is about a quarter mile from the SPS Facility.

14.    Plaintiff Hayley Doyle is a natural person and citizen of the Commonwealth of Pennsylvania, with a principal residence at 747A York Way Place, Jenkintown, Pennsylvania 19046, which is less than a half mile from the SPS Facility.

15.    Defendant, SPS Technologies, LLC d/b/a PCC Fasteners – SPS Jenkintown ("SPS" or "Defendant") is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania. The Defendant's principal office is located at 301 Highland Avenue, Jenkintown, Pennsylvania in Montgomery County. SPS's registered agent for service of process is National Registered Agents, Inc., 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101.

16.    The true names and capacities, whether individual, corporate, associate, or otherwise of certain vendors, third parties, and/or their alter egos sued herein as JOHN DOES 1 through 100 inclusive are presently unknown to Plaintiffs who therefore sue these Defendants by

4

Case ID: 250203845

fictitious names. Plaintiffs will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that JOHN DOES 1 through 100 were authorized to do and did business throughout the United States, including in the state and county where the Plaintiffs reside. Plaintiffs are further informed and believe, and based thereon allege, that JOHN DOES 1 through 100 were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events and happenings set forth herein.

17.     Plaintiffs are informed and believe and based thereon allege, that at all times relevant herein each Defendant was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this matter pursuant to 42 Pa. Cons. Stat. § 931 and 42 Pa. Cons. Stat. § 5301, as Plaintiffs were and are citizens of Pennsylvania at the time of the fire. This Court also has jurisdiction over this action as Defendant continuously and systematically operates and conducts business in Philadelphia County, and all the relevant incidents involved in this matter occurred in Pennsylvania.

19.     Venue is proper in this Court pursuant to Pa. R. C. P. 2179 because the Defendants regularly conduct business in Philadelphia County, a substantial part of events, acts, and omissions giving rise to Plaintiffs' claims occurred in, was directed to, and/or emanated from this County.

Case ID: 250203845

## FACTUAL ALLEGATIONS

20.     According to its website, SPS operates from its "560,000 square foot facility" in Jenkintown and "specializes in the design and manufacture of high strength nuts, bolts and associated products."[6]

21.     In addition to the aerospace industry, SPS also sells its products to customers in a variety of fields including "medical, automobile racing, marine, and power generation" as these consumers "demand aerospace quality fasteners in many of their applications."[7]

22.     According to news reports, SPS "is well known to state and federal environmental regulators as a large generator of chemical waste, some of which is categorized as 'ignitable.'"[8]

23.     As stated above, the fire started on Monday, February 17, 2025 at approximately 9:30 pm.

24.     Due to the extensive smoke and concerns regarding air quality, residents and businesses were advised to shelter in place and/or voluntarily evacuate.

25.     In fact, Abington Township declared a Disaster Emergency, which allows the township emergency management coordinator to take all actions necessary to address the disaster.

26.     The fire burned for approximately five days before it was extinguished.

27.     While preliminary air quality testing has not yet detected any chemicals of concern, such investigations are ongoing.

---

[6] https://www.pccfasteners.com/companies/pcc-fasteners/sps-jenkintown.html (last visited Feb. 25, 2025).
[7] *See id.*
[8] Kummer, Frank & Whelan, Aubrey, "Abington company that caught fire had toxic 'ignitable waste' on site and had past EPA violations," PHILA. INQUIRER, Feb. 18, 2025, *available at* https://www.inquirer.com/news/pennsylvania/sps-technologies-fire-chemical-waste-20250218.html?id=NSFg7guFPkjrG&utm_source=social&utm_campaign=gift_link&utm_medium=referral (last visited Feb. 25, 2025).

Case ID: 250203845

28.     Regarding water quality, there have already been reports of cyanide identified in the Tacony Creek that is situated in close vicinity to SPS.[9]

29.     It is well known that SPS uses harsh chemicals as part of its manufacturing processes, including, but not limited to trichloroethylene, vinyl chloride, and 1-2 dichloroethane.[10]

30.     Exposure to these chemicals "can cause cancer and be dangerous for fetal development, as well as increase the risk of wide-ranging health conditions, according to the Agency for Toxic Substances (ATSDR) and EPA."[11]

31.     In 2023, SPS generated and disposed of 177 tons of chemicals, according to the EPA's Toxic Release Inventory.[12] This included a classification of chemicals known as "ignitable waste" that contain benzene and methyl ethyl ketone.[13]

32.     Even if there were no chemicals present at the SPS Facility, experts warn that smoke and fumes from a fire in a large, older building can pose serious health risks to the air and water used by people nearby.[14]

33.     Older buildings, like the buildings that burned for days at the SPS Facility, are made with heavy metals and the combustion process will release small particles.[15]

34.     Public health officials have warned that "some of the solvents that could be present at the [SPS Facility] can be toxic if inhaled in sufficient quantities" while expressing concern about the presence of benzene and vinyl chloride at the SPS Facility.[16]

---

[9] Jenkintown SPS fire: Cyanide found in Tookany Creek - WHYY *available at* https://whyy.org/articles/cyanide-found-tookany-creek-sps-technologies-jenkintown/ (last visited Feb. 26, 2025).
[10] *See id.*
[11] *See id.*
[12] *See id.* (citing https://enviro.epa.gov/envirofacts/rcrainfo/facility?handlerId=PAD000000554 (last visited Feb. 25, 2025)).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

Case ID: 250203845

35.    Defendant has been recently cited for previous environmental violations.

36.    Specifically, in 2023, SPS paid a penalty of approximately $109,000 for storing chemicals without a permit and other violations.[17]

37.    Plaintiff Lightbridge is a daycare located directly across the street from the SPS Facility. Nishitkumar Patel is the Managing Owner of Lightbridge and he was forced to close Lightbridge for two days and his business has been significantly disrupted due to the fire. During the fire and in its aftermath, Lightbridge has been forced to expend money and resources on air and water testing and other issues related to the fire. Lightbridge has experienced a rash of cancellations from parents concerned about toxic exposures from poor air and water quality in the vicinity. Lightbridge's outdoor and playground facilities have been damaged by the fire and will require either professional cleaning services or replacement, at a significant cost.

38.    As a result of the fire, Plaintiff Lightbridge has been forced to expend money and time to deal with disruptions from the fire. Plaintiff Lightbridge has also experienced lost income, lost profits, and a diminution in the value of real and personal property as a result of the fire.

39.    Plaintiff McKelvey was home with her family when the fire and explosions erupted at the SPS Facility on the night of February 17, 2025. Embers from the fire landed on her home severely damaging her concrete walkway and she is investigating the potential damage to the roof of her house. She and her family evacuated and they have missed work and school due to this disruption. The fire has caused Plaintiff and her family significant anxiety and emotional distress, including concerns about future adverse health effects as a result of exposure to harmful toxic exposures in the air and water. Plaintiff McKelvey has also suffered a diminution in the value of her real and personal property due the fire at the SPS Facility.

---

[17] *See id.*

Case ID: 250203845

40.     Plaintiff Hayley Doyle was in her neighborhood when the fire and explosions erupted at the SPS Facility on the night of February 17, 2025. Embers and debris from the fire landed on her home and property. She was advised to shelter in place and/or evacuate, and she evacuated. She has missed work because of the fire. The fire has caused Plaintiff significant anxiety and emotional distress, including concerns about future adverse health effects as a result of exposure to harmful toxic exposures in the air and water. She has experienced symptoms related to exposure including sore throat, eye irritation, headaches and nausea. She has spent money on cleaning supplies and to install air filters in the home. Plaintiff Doyle has also suffered a diminution in the value of her real and personal property due the fire at the SPS Facility.

41.     Plaintiffs Kimberly and Mark Druckenmiller were home when the fire and explosions erupted at the SPS Facility on the night of February 17, 2025. Embers from the fire landed on their home and property. They were advised to shelter in place and did so. The fire has caused Plaintiffs significant anxiety and emotional distress, including concerns about future adverse health effects as a result of exposure to harmful toxic exposures in the air and water. Plaintiffs Mr. and Mrs. Druckenmiller have also suffered a diminution in the value of their real and personal property due the fire at the SPS Facility.

## CLASS ALLEGATIONS

42.     Plaintiffs bring this class action for injunctive and related equitable and monetary relief on behalf of themselves, and as a class action on behalf of the following putative sub-classes (hereafter the "Class" or "Classes"):

Case ID: 250203845

**Resident Sub-Class**:

> All citizens and residents who were impacted, injured, or damaged by Defendant's fire that started on February 17, 2025 including those who lived nearby the SPS Facility.

**Business Sub-Class**:

> All businesses and their employees that were impacted, injured, or damaged by Defendant's fire that started on February 17, 2025 including those businesses that are situated nearby the SPS Facility and/or were forced to close or otherwise amend normal business operations because of the fire and employees of those businesses that work in or near the area of the fire.

Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

43. Excluded from the Class are (i) any judge presiding over this action and members of their families; (ii) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and their current or former employees, officers and directors; (iii) any individual who received complete remuneration from Defendants; (iv) persons who properly execute and file a timely request for exclusion from the Class; and (v) the legal representatives, successors or assigns of any such excluded persons.

44. **Numerosity:** The exact number of Class members is unknown to Plaintiffs at this time, but on information and belief, there are at least thousands of proposed class members located throughout the United States of America. The proposed classes contain members so numerous that separate joinder of each member of the class is impractical. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

45. **Commonality and Predominance:** There is a well-defined community of interest in the questions of law and fact involved affecting the plaintiff Class and these common questions

Case ID: 250203845

predominate over any questions that may affect individual Class members. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members. Defendant's actions and omissions uniformly affected the Plaintiffs and all members of the Class. Common questions include but are not limited to:

a.  Whether the fire that began on February 17, 2025 was preventable;

b.  Whether the harms the fire caused were preventable;

c.  Whether Defendant's activities at the SPS Facility constituted ultrahazardous activity;

d.  Whether Defendant owed a duty to implement and employ reasonable safety procedures to prevent the start and/or spread of catastrophic fires at the SPS Facility;

e.  Whether Defendant breached its duty to use reasonable care in overseeing the manufacturing activities at the SPS Facility;

f.  Whether Defendant knew or should have known that its policies and procedures at the SPS Facility were not sufficient to ensure safety;

g.  Whether Defendant's conduct in permitting the fire to occur was reckless;

h.  Whether the resulting harms to personal and property rights suffered by Plaintiffs and class members was foreseeable;

i.  Whether the harms suffered by Plaintiffs and class members is significant;

j.  Whether the harms suffered by Plaintiffs and class members is greater than what Plaintiffs should be required to bear without compensation;

k.  Whether Defendant's conduct warrants the imposition of punitive damages; and,

l.  Whether Plaintiffs and the Class are entitled to relief, and the nature of such relief.

46.  **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs were adversely impacted by the fire at the SPS Facility, as were the other members of the Class. Further, Plaintiffs and the Class were all victims of Defendant's negligence in failing to prevent the fire. Plaintiffs and the Class sustained damages as a result of Defendant's uniform

Case ID: 250203845

wrongful conduct. The claims of Plaintiffs and the Class Members arise from the same practice or course of conduct, i.e., Defendant's negligent operation and oversight of the SPS Facility.

47. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and Plaintiffs' Counsel has the financial resources to do so.

48. **Superiority and Appropriateness:** Plaintiffs and the members of the Class have suffered, and more will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

Case ID: 250203845

49.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's conduct challenged herein applies and affects members of the Class uniformly and Plaintiffs' challenge of this conduct hinges on Defendants' actions with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

50.     Adjudication of individual class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

<u>COUNT I</u>
<u>NEGLIGENCE AND RECKLESSNESS</u>
<u>RESIDENT AND BUSINESS SUB-CLASSES V. DEFENDANTS</u>

51.     Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

52.     Defendant had a duty to area residents and businesses to exercise ordinary care to prevent foreseeable interference—here, by the release of toxic fumes and particulate matter from the fire—with the residents' and business' use and enjoyment of their properties.

53.     Defendant breached said duty to exercise ordinary care by one or more of the following acts, omissions, and/or failures:

a.     Failing to develop, maintain, and/or enforce adequate policies and procedures as necessary to prevent the February 17, 2025 explosion and resultant fire at the SPS Facility;

Case ID: 250203845

b.      Failing to develop and implement an adequate fire prevention program necessary to prevent the February 17, 2025 fire at the SPS Facility;

c.      Failing to develop, design, construct, inspect, maintain, operate, control, and/or engineer fire protection and/or fire suppression systems to counter the risk of explosion or fire in its warehouse area;

d.      Failing to develop and employ a backup release management plan to control the release of noxious gas and other harmful emissions in the event of a fire;

e.      Otherwise failing to develop, design, construct, inspect, maintain, operate, control, and/or engineer the SPS Facility to prevent catastrophic fires and uncontrolled releases of noxious gas and other harmful emissions;

f.      Failing to safely store chemicals and other flammable materials to prevent spread of fire should an explosion or fire occur;

g.      Failing to properly inspect its premises to ensure fire safety measures were in place; and,

h.      Failing to properly enforce policies, rules, and/or regulations to ensure fire safety in the facility.

54.     Defendant knew or should have known that that SPS's operations, including forging with high-temperature furnaces, milling fine metal powders, and electroplating with hazardous chemicals, are prone to fire and explosion risks.

55.     Defendant knew or should have known of the risks of the fire and explosion at its SPS Facility, which arise from forging with high-temperature furnaces, milling fine metal powders, and electroplating with hazardous chemicals, and Defendant failed to supervise its employees and agents in carrying out these operations.

56.     It was reasonably foreseeable that grave harm, including a fire and explosion, would occur if the manufacturing and production equipment and materials were not properly stored or used. Defendant was aware, or should have been aware, of these risks, but Defendant nevertheless continued to operate, maintain, and manage the equipment and materials at the SPS Facility in a negligent manner.

Case ID: 250203845

57.     As a direct and proximate result of Defendant's actions, Plaintiffs' and class members' properties have been invaded, for more than a week, by soot, ash, offensive odors, noxious emissions, and particulate matter, during and following, the February 17, 2025 fire.

58.     As a direct, proximate, and foreseeable result of one or more of Defendant's failures, acts or omissions, Plaintiffs and class members have suffered damages.

59.     Defendant's conduct was negligent, grossly negligent and/or reckless. Defendant allowed conditions to exist that caused noxious odors and other harmful emissions to physically invade Plaintiffs' and class members' properties, and thus demonstrated a substantial lack of concern for whether injury resulted to Plaintiffs' or class members' properties.

60.     Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including an injunction to enjoin Defendant's negligent conduct, actual damages, treble damages, punitive damages, attorneys' fees or costs, injunctive relief, and any additional relief the Court deems necessary or proper.

### COUNT II
### PRIVATE NUISANCE
### RESIDENT AND BUSINESS SUB-CLASSES V. DEFENDANTS

61.     Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

62.     Defendant knew or should have known that SPS's operations include forging with high-temperature furnaces, milling fine metal powders, and electroplating with hazardous chemicals—processes essential to aerospace fastener production and prone to fire and explosion risks—and that fine metal powders can ignite under certain conditions, and electroplating generates flammable hydrogen gas.

Case ID: 250203845

63. Defendant knew or should have known of the risks of the fire explosion at its SPS Facility, including as a result of failures to properly maintain, operate, or otherwise handle its high temperature furnaces, milling fine metal powders, and electroplating with hazardous chemicals and to supervise its agents and employees in carrying out these duties.

64. Defendant was on notice of the harms associated with fires and explosions.

65. Defendant knew or should have known of the risks to citizens and property in the area surrounding the SPS Facility that would arise from its failures to undertake proper safety precautions and monitor its agents and employees, including the risk that the fire and explosion would occur and lead to injury to businesses, residents, and property damage to the homes and other personal property of residents of the surrounding area.

66. Defendant knew or should have known that a fire and explosion of its factory would pose a significant risk of injury and property damage, lost income, lost profits, including the diminution of value to each Plaintiff's property and the loss of enjoyment of the same.

67. Defendant knew or should have known that a fire and explosion would cause significant emotional and/or health issues to the residents and surrounding area and that affected individuals would require medical attention, including psychiatric care, and would likely suffer emotional and/or health issues as a result.

68. A private nuisance occurs when a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property.

69. The fire and explosion, and its effects, to the persons and businesses in the class zone amounted to an unreasonable and substantial annoyance to Plaintiffs' property and unreasonably interfered with the use and enjoyment of such property, as they were required to

Case ID: 250203845

remain indoors under a shelter-in-place order, among other interferences, which constitutes a private nuisance.

70.    Due to the Defendant's failures and interferences, Plaintiffs have suffered damages directly caused by the fire and explosion.

71.    As a direct and proximate result of the Defendant's nuisance, Plaintiffs are entitled to recover damages, including compensatory and punitive damages, as permitted by law.

72.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including an injunction to enjoin Defendant's negligent conduct, actual damages, treble damages, punitive damages, attorneys' fees or costs, injunctive relief, and any additional relief the Court deems necessary or proper.

## COUNT III
## PUBLIC NUISANCE
## RESIDENT AND BUSINESS SUB-CLASSES V. DEFENDANTS

73.    Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

74.    Defendant owes a duty to provide clean air, safe for breathing and other purposes to the communities of Jenkintown and Abington Township, Pennsylvania.

75.    Defendant has unreasonably interfered with a right common to the public, the right to clean air.

76.    Defendant has failed to provide clean air and water to the residents of Jenkintown and Abington Township, Pennsylvania. On information and belief, the air surrounding Defendant's facility has become contaminated with smoke and hazardous particulates, and noxious odors, as has the water

Case ID: 250203845

77.     Defendant's conduct has caused harm to Plaintiffs and the Class in not only the damage to their personal property, and from loss of income, but their reasonable fear about breathing in and consuming the contaminated air and water, as well as their desire to go outside.

78.     Plaintiffs and the Class have been caused discomfort and annoyance by the contaminated air caused by Defendant's fire and explosion.

79.     Plaintiffs and the Class are entitled to an order requiring Defendant to abate the issues with the air and water in SPS's area, surrounding Jenkintown and Abington Township, Pennsylvania.

80.     Plaintiff and the Class are entitled to damages amounting to: (a) the difference between the value of the land before the harm and the value after the harm, (b) the loss of use of the land, and (c) discomfort and annoyance to them as occupants to their land.

81.     Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including an injunction to enjoin Defendant's negligent conduct, actual damages, treble damages, punitive damages, attorneys' fees or costs, injunctive relief, and any additional relief the Court deems necessary or proper.

**COUNT IV**
**MEDICAL MONITORING**
**RESIDENT SUB-CLASS V. DEFENDANTS**

82.     Plaintiffs incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

83.     Based upon knowledge available to Defendant, it knew or reasonably should have known that its negligence in permitting the fire to occur would cause nearby residents to be exposed to toxic chemicals and fumes that would substantially increase their risk of contracting serious diseases, including cancer and other respiratory problems.

Case ID: 250203845

84.     Yet, despite this knowledge, the Defendant failed to warn or instruct residents, including Plaintiffs and Class members, regarding the increased risk of cancer and respiratory issues from the fire.

85.     As a proximate result of the Defendant's tortious conduct, the Plaintiffs and members of the Resident Subclass have experienced an increased risk of developing significant medical problems including cancer and respiratory issues from exposure to toxic fumes and chemicals from the fire.

86.     Cancer and respiratory problems require specialized diagnostic testing and preventative measures that are not generally given to the public at large.

87.     The available medical monitoring techniques that are specific to residents who have been exposed to contaminated water and/or airborne particulate and fumes are different from what is normally recommended in the absence of exposure to this risk of harm.

88.     Medical monitoring includes, but is not limited to, baseline tests and diagnostic examinations which will assist in diagnosing cancer and other respiratory problems.

89.     The early and accurate diagnosis of these cancers and respiratory problems will greatly expand the treatment options available to the members of the Resident Subclass and drastically improve their short and long-term survival rates.

90.     Likewise, medical monitoring can incorporate preventative treatments and measures designed to halt or impede the development of these cancers and respiratory problems.

91.     The available medical monitoring examinations and tests are reasonably necessary according to contemporary scientific principles within the medical community specializing in the diagnosis of cancer and respiratory problems from chemical fires.

Case ID: 250203845

92.     Through appropriate monitoring, diagnostic testing and preventative measures, Plaintiffs and the other members of the Resident Subclass will be far less likely to experience death and/or an untreatable form disease.

93.     Therefore, Plaintiffs and the other members of the Resident Subclass, seek damages for the cost and expense of medical monitoring including, but not limited to, baseline assessments, diagnostic testing, and preventative measures to facilitate the prevention and diagnosis of cancer and respiratory problems from chemical fires. The medical monitoring program should include a fund (overseen by the Court) to pay for the baseline assessments, diagnostic testing, and preventative measures for Resident Subclass members as frequently and appropriately as necessary.

94.     Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including an injunction to enjoin Defendant's negligent conduct, actual damages, medical monitoring, treble damages, punitive damages, attorneys' fees or costs, injunctive relief, and any additional relief the Court deems necessary or proper.

<u>**Need For Injunctive Relief**</u>

95.     Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

96.     By committing the acts alleged herein, Defendant, and each of them, have caused and continue to cause irreparable harm for which there is no plain, speedy or adequate remedy at law.  In the absence of equitable relief, Plaintiffs, members of the Sub Classes, and the general public are in substantial risk of harm.

Case ID: 250203845

## **Prayer for Relief**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Classes and Subclasses, prays that the Court enter an order and judgment in their favor and against Defendant as follows:

(a)    Certifying this case as a class action, designating Plaintiffs as Class Representatives and their attorneys as Class Counsel;

(b)    Awarding actual damages to the Plaintiffs and the Class in an amount to be proven at trial;

(c)    Granting equitable and injunctive relief to Plaintiffs and the Class, as appropriate;

(d)    With respect to Count IV (medical monitoring), certification of the Class and Subclass, as proposed in this Complaint;

(e)    With respect to all other counts in this Complaint, certification of the Class and Subclass, as proposed in this Complaint;

(f)    Awarding punitive damages as appropriate;

(g)    Awarding Plaintiffs and the Class reasonable costs and attorneys' fees;

(h)    Awarding Plaintiffs and the Class pre- and post-judgment interest; and

(i)    Awarding Plaintiffs and the Class such other further relief, including all equitable relief, as may be just and proper.

Case ID: 250203845

## JURY DEMAND

Plaintiffs request trial by jury on all matters that can so be tried.

Dated: 2/27/25

Respectfully submitted,

Kila Baldwin, Esq.
PA Bar No. 94430
Richard M. Golomb, Esq.
PA Bar No. 42845
Kevin W. Fay, Esq.
PA Bar No. 308252
**ANAPOL WEISS**
One Logan Square
130 N. 18th Street, #1600
Philadelphia, PA 19103
Telephone: (215) 985-9177

*Attorneys for Plaintiffs and the Class*

Case ID: 250203845

## <u>VERIFICATION</u>

I, COLLEEN MCKELVEY, verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date: 02/27/2025 _____

_____
COLLEEN MCKELVEY

Case ID: 250203845

## <u>VERIFICATION</u>

I, KIMBERLY DRUCKENMILLER, verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date: _____  02/27/2025

KIMBERLY DRUCKENMILLER

I, MARK DRUCKENMILLER, verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date: _____  02/27/2025

MARK DRUCKENMILLER

Case ID: 250203845

## <u>VERIFICATION</u>

I, HAYLEY DOYLE, verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

02/27/2025

Date: _____



_____

HAYLEY DOYLE

## **VERIFICATION**

I, NISHITKUMAR PATEL, verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date: 02/27/2025 _____

_____
NISHITKUMAR PATEL